

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AB:RJN
F.#2009R01167

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 7, 2011

**BY HAND AND ECF**

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: United States v. Salvatore Cutaia, Jr.
           Criminal Docket No. 10-0010 (S-6) (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this letter in response to the defendant's August 26, 2011 sentencing submission ("Def. Ltr."). Salvatore Cutaia, Jr. ("Cutaia, Jr.") is scheduled to be sentenced by the Court on September 9, 2011 at 11:00 am.

I.    Background

      On January 20, 2011, the defendant pled guilty pursuant to a plea agreement to Count Twenty-Two of the superseding indictment charging a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). As set forth below, this Count related to the defendant's participation in the robbery of a narcotics trafficker on Staten Island, New York,

      The charges stemmed from an investigation into the activities of members and associates of La Cosa Nostra, and in particular, into multiple robberies committed over several years by members and associates of the Luchese organized crime family of La Cosa Nostra ("Luchese crime family").

      As described in the Probation Department's Presentence Investigation Report ("PSR"), in the summer of 2009, the defendant, his brother and co-defendant Joseph Cutaia ("J. Cutaia"), and two cooperating witnesses, agreed to rob a drug dealer who they knew resided on Staten Island and who, they believed, stored drugs and drug proceeds at his residence. Prior to the robbery, J. Cutaia and the cooperating witnesses rented a van, secured a police

scanner, and conducted surveillance of the dealer's residence. PSR ¶ 69. Just prior to the robbery, J. Cutaia enlisted Cutaia, Jr. to drive the rented van for the robbery.

Once outside the dealer's residence, while J. Cutaia and the cooperating witnesses confronted and chased an individual they thought was the dealer, Cutaia, Jr. waited in the van nearby. J. Cutaia and the cooperating witnesses then dragged the individual into the rented van, where he was assaulted and restrained him using zip ties. Once restrained, J. Cutaia and the cooperating witnesses brought this victim into the residence, where they restrained another female individual using zip ties and then waited for the drug dealer to return home. When he did, they threatened him with a knife and a gun and learned that the dealer stored his drugs at his brother-in-law's house and drug proceeds at his mother house. Cutaia, Jr.'s coconspirators then demanded that the drug dealer drive them in his own car to his mother's house. Cutaia, Jr. followed behind in the van, and used the walkie talkie to communicate with his coconspirators regarding their progress. At the victim's mother's house, the defendants obtained $88,000 from the drug dealer. The defendants also obtained $20,000 from the trunk of the drug dealer's car. After paying a portion of the proceeds to Luchese captain Joseph Lubrano, J. Cutaia, Cutaia, Jr. and the cooperating witnesses divided the money. PSR ¶¶ 70-71.

II. The Probation Department's Presentence Investigation Report

According to the PSR, the defendant's total offense level is 29 and his criminal history category is I, with a corresponding range of imprisonment of 87 to 108 months. PSR ¶¶ 155, 161, 213. The plea agreement contemplates a base offense level of 19 with a corresponding range of imprisonment of 30 to 37 months.

The PSR differs from the Guidelines calculation set forth in the plea agreement in several respects. First, the PSR includes a five-level enhancement for the brandishing of a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(C). Second, the PSR includes a four-level enhancement for abduction, pursuant to U.S.S.G. § 2B3.1(b)(4)(A). Third, the PSR includes a one point enhancement pursuant to U.S.S.G. § 2B3.1(b)(6), because the taking of a controlled substance was the object of the offense.

2

Fourth, pursuant to U.S.S.G. § 2B3.1(b)(7)(C), the PSR includes a two level enhancement because the loss exceeded $50,000 but was less than $250,000.  Finally, the PSR does not include the two point enhancement for car jacking that was included in the plea agreement pursuant to U.S.S.G. § 2B3.1(b)(5).

      The government agrees that the enhancements included in the PSR technically apply because Cutaia, Jr., as a knowing and willing participant in the robbery, is responsible for the conduct of his coconspirators.  Nevertheless, the government recognizes that Cutaia, Jr.'s role in the offense was more limited than that of his coconspirators.  The government respectfully submits that the defendant's sentence should reflect the seriousness of his involvement in this violent crime, but should also distinguish between his conduct and that of his coconspirators.  Accordingly, in the plea agreement, the government does not insist on the application of enhancements that related to acts performed by Cutaia, Jr.'s coconspirators in which Cutaia, Jr. was not directly involved.

      Rather, as noted above, the plea agreement does include a two-point enhancement for car jacking, based on Cutaia, Jr.'s role in following his coconspirators as they forced the victim to drive to his mother's house to retrieve his drug proceeds.  At this phase of the robbery, Cutaia, Jr. played a more active role, communicating with J. Cutaia in particular to advise him of the progress of the other coconspirators.  Thus, the government respectfully submits that this two-point enhancement should be applied.

      Furthermore, the government objects to the defendant's request for a sentence below the Guidelines range of 30 to 37 months' incarceration set forth in the plea agreement because he expressly agreed not to seek a sentence below it (Plea Ag. ¶ 2),[1] and because a sentence below this range would not adequately reflect the seriousness of the offense and would not be sufficient to serve the other purposes set forth in 18 U.S.C. § 3553(a).

---

    [1] The government has communicated with defense counsel in this matter regarding the stipulation contained in the plea agreement, and was advised that defense counsel intends to withdraw his request for a sentence below the Guideline range set forth in the agreement.

III. The Defendant's History and Characteristics

    A. Family Circumstances

The defendant's sentencing submission is focused on his difficult upbringing and his current familial situation. Although the Guidelines are of course advisory, the pertinent Guidelines policy statement provides that "family ties and responsibilities are not ordinarily relevant" (U.S.S.G. § 5H1.6), and the cases interpreting the Guidelines provide that family ties and relationships warrant a downward departure only when truly extraordinary. See United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997). Absent extraordinary circumstances, courts are discouraged from downwardly departing based upon family circumstances. Galante, 111 F.3d at 1034; United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").

Such extraordinary circumstances are present where family members are "uniquely dependent" upon a defendant for financial or emotional support. United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998). In Faria, the Second Circuit reaffirmed its position that adverse consequences to a family, even a family that includes young children, due to a defendant's incarceration do not warrant a downward departure without truly exceptional circumstances. Id. at 763.

The government respectfully submits that the defendant's family circumstances are far from exceptional. Rather, the defendant's children appear to have a substantial support network through their mother, grandmother and great-grandmother. PSR ¶¶ PSR 176-177. Thus, the children are not "uniquely dependent" on Cutaia, Jr.'s support.

    B. Criminal History

The defendant further suggests that his involvement in this offense was inconsistent with his primary effort to maintain legitimate employment. Def. Ltr. at 3. Yet, as noted in the PSR, several months after his involvement in this robbery, Cutaia, Jr. attempted a burglary on Staten Island. His participation in that burglary was discovered only after his federal arrest in this case. However, his involvement in that crime undermines the argument that his criminal conduct in this case was an aberration from an otherwise law-abiding life.

4

IV. <u>Conclusion</u>

As set forth above, this case involves competing factors - on the one hand, the violent nature of the robbery in which the defendant willingly participated, and, on the other hand, the defendant's more limited involvement in the violent aspects of the crime. The government respectfully submits that the Court should consider the nature and circumstances of the robbery as a whole, as well as the defendant's particular role in it, to determine the appropriate sentence under 18 U.S.C. § 3553.

> Respectfully submitted,
>
> LORETTA E. LYNCH
> United States Attorney
>
> By:   /s/
> Rachel J. Nash
> Assistant U.S. Attorney
> (718) 254-6072

cc:  Michael Padden, Esq. (By ECF)
     Gregory Giblin, U.S. Probation (By Hand)